IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TBF FINANCIAL, LLC<br>520 Lake Cook Rd., Suite 510<br>Deerfield, IL 60015 | : CIVIL ACTION NO. 13-cv-276<br>:<br>: |
| Plaintiff | :<br>: |
| v. | :<br>: |
| PENN LIBERTY BANK<br>724 West Lancaster Ave., Suite 210<br>Wayne, PA 19087 | :<br>:<br>: |
| Defendant | :<br>: |

## <u>O R D E R</u>

It is hereby **ORDERED** and **DECREED** that Summary Judgment is **GRANTED** in favor

of Defendant, Penn Liberty Bank and that Plaintiff, TBF Financial, LLC's, claims against Penn

Liberty Bank are dismissed with prejudice.

BY THE COURT:

_____

J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TBF FINANCIAL, LLC<br>520 Lake Cook Rd., Suite 510<br>Deerfield, IL 60015 | : CIVIL ACTION NO. 13-cv-276<br>:<br>:<br>:<br>: |
| Plaintiff | :<br>: |
| v. | :<br>: |
| PENN LIBERTY BANK<br>724 West Lancaster Ave., Suite 210<br>Wayne, PA 19087 | :<br>:<br>: |
| Defendant | :<br>: |

## DEFENDANT, PENN LIBERTY BANK'S MOTION FOR
## SUMMARY JUDGMENT PURSUANT TO F.R.C.P. 56

Defendant, Penn Liberty Bank moves this Honorable Court for summary judgment

pursuant to Federal Rule of Civil Procedure (hereinafter referred to as "Fed. R. Civ. P.") 56 and,

in support thereof, represents as follows:

1. On January 16, 2013, TBF Financial, LLC (hereinafter referred to as "Plaintiff" or

"TBF") filed a civil action Complaint alleging unjust enrichment against Defendant, Penn

Liberty Bank (hereinafter, "Defendant" or "Penn Liberty"), in the United States District Court for

the Eastern District of Pennsylvania.

2. On March 22, 2013, Defendant filed a Motion to Dismiss Plaintiff's Complaint

for failure to state a claim upon which relief may be granted.

3. On April 3, 2013, Plaintiff filed an Amended Complaint against Penn Liberty

asserting a cause of action for an equitable lien. A true and correct copy of which is attached

hereto and incorporated by reference herein as Exhibit "A."

4.    On April 17, 2013, Defendant filed a Motion to Dismiss Plaintiff's Amended Complaint for failure to state a claim upon which relief may be granted.

5.    By Order dated June 13, 2013, this Honorable Court denied Defendant's motion to dismiss.

6.    Defendant filed its Answer to Amended Complaint with Affirmative Defenses on June 24, 2013, a true and correct copy of which is attached hereto and incorporated by reference herein as Exhibit "B.".

## I.    FACTUAL BACKGROUND

7.    On or about December 11, 2002, Waypoint Bank (hereinafter referred to as "Waypoint") loaned Five Hundred Thousand Dollars ($500,000.00) to the Reinharts (hereinafter referred to as the "Waypoint Loan") and the Reinharts executed a Promissory Note evidencing their obligation to repay said loan (hereinafter referred to as the "Waypoint Note").  A true and correct copy of the Waypoint Note is attached as Exhibit "A" to Plaintiff's Amended Complaint and incorporated herein by reference.

8.    As security for said loan, the Reinharts delivered to Waypoint a mortgage on the property dated December 11, 2002 (hereinafter referred to as the "Waypoint Mortgage").  A true and correct copy of the Waypoint Mortgage is attached as Exhibit "B" to Plaintiff's Amended Complaint and incorporated herein by reference.

9.    On or about January 21, 2005, Sovereign Bank, N.A. (hereinafter referred to as "Sovereign") acquired Waypoint and, through this transaction, acquired Waypoint's right, title and interest in the Reinhart Note and Mortgage.  (See, Exhibit "A", ¶ 9)(the Waypoint Loan, Note and Mortgage are hereinafter referred to as the Sovereign Loan, Note and Mortgage, respectively.)

10.  On or about February 28, 2007, Penn Liberty loaned Seven Hundred Fifteen Thousand Dollars ($715,000.00) to Nicholas J. and Denise G. Reinhart (hereinafter referred to as the "Reinharts"). Said loan was evidenced by a Credit Agreement and Disclosure.  A true and correct copy of the Credit Agreement and Disclosure is attached hereto and incorporated by reference herein as Exhibit "C."

11.  As security for Penn Liberty's loan, the Reinharts provided Penn Liberty a second mortgage on the property located at 450 Hertzog Valley Road, Denver, Pa. (hereinafter, "the property").  A true and correct copy of the Open-End Mortgage and Security Agreement (hereinafter referred to as the "Penn Liberty Mortgage") is attached hereto and incorporated by reference herein as "D."

12.  Pursuant to the terms of the Penn Liberty Mortgage the Reinharts were required to obtain fire and extended insurance for the benefit of Penn Liberty for the insurable value of the subject property. (See, Exhibit "D", p. 4)

13.  The Reinharts' obligation to obtain fire and extended insurance for the benefit of Penn Liberty is further evidenced by the February 28, 2007 Agreement to Provide Insurance, a true and correct copy of which is attached hereto and incorporated by reference herein as Exhibit "E."

14.  The Reinharts obtained the required insurance coverage through State Farm Fire and Casualty Company (hereinafter referred to as "State Farm"), Policy No. 78-GU-2791-3, which identified Penn Liberty as mortgagee.  See, State Farm Declarations Sheet and Renewal Certificates for Policy No. 78-GU-2791-3, true and correct copies of which are attached hereto and incorporated by reference herein collectively as Exhibit "F."

15.  On September 23, 2008, State Farm served notices of cancellation for Policy No. 78-GU-2791-3 on each of the following: the Reinharts, Sovereign and Penn Liberty at the

3

addresses maintained in State Farm's records. (See, Affidavit of Jeffrey LaPlante of State Farm, ¶ 3, a true and correct copy of which is attached hereto and incorporated by reference herein as Exhibit "G.") A true and correct copy of each Notice of Cancellation is attached hereto and incorporated by reference herein collectively as Exhibit "H."

16. On or about March 30, 2009 Sovereign entered into a Forbearance and Modification Agreement with the Reinharts regarding the outstanding obligations under the Sovereign Note (hereinafter referred to as the "Reinhart loan"). A true and correct copy of the Forbearance and Modification Agreement is attached hereto and incorporated by reference herein as Exhibit "I."

17. The Forbearance and Modification Agreement contains a confession of judgment provision authorizing Sovereign to confess judgment against the Reinharts to recover all sums due or owing under the agreement, as well as costs of suit and reasonable attorneys' fees. (See, Exhibit "I", p. 5, ¶ 26.)

18. On December 10, 2009, Erie Insurance Group (hereinafter referred to as "Erie") issued a fire insurance policy for the subject property which identified Penn Liberty as the Primary Residence-Mortgagee (hereinafter referred to as the "Erie Policy"). A true and correct copy of the Erie Policy Declarations Page and amendments thereto are attached hereto and incorporated by reference herein collectively as Exhibit "J."

19. On April 9, 2010, a fire destroyed the Reinhart home located at the property insured by the Erie Policy. (See, Exhibit "A", ¶ 17.)

20. Penn Liberty made a claim under the Erie Policy for fire coverage benefits in accordance with the terms of the contract for insurance issued by Erie.

21. On June 7, 2010, Erie issued a check to Penn Liberty in the amount of Seven Hundred Thirty-Three Thousand, One Hundred Thirty-Seven and 19/100 Dollars ($733,137.19)

representing the proceeds from the Erie Policy to which Penn Liberty was entitled as the named

Primary Residence-Mortgagee.   A true and correct copy of the check issued to Penn Liberty is

attached hereto and incorporated by reference herein as "K."

     22.   On June 11, 2010, Penn Liberty assigned its mortgage on the subject property to

Erie.  A true and correct copy of the Assignment of Mortgage is attached hereto and incorporated

by reference herein as Exhibit "L."

     23.   In or about September, 2012, Sovereign engaged the Debt Exchange, Inc.

(hereinafter referred to as "DebtX") to solicit bids from investors for the purchase of a charge-off

pool consisting of loans including the Reinhart loan (hereinafter referred to as the "Sovereign

Assets").

     24.   On or before September 12, 2012, DebtX uploaded to its website,

https://www.debtx.com/, a Terms of Sale Memorandum and Asset Summary which set forth the

offering of the Sovereign Assets.  A true and correct copy of the Terms of Sale Memorandum

and Asset Summary are attached hereto and incorporated by reference herein as Exhibits "M"

and "N", respectively.

     25.   The Terms of Sale Memorandum further states that "[i]t is the Bidder's sole

responsibility to perform its own due diligence and examine the Review Files to its satisfaction."

(See, Exhibit "M", p. 1.)

     26.   On September 12, 2012, Adam Boehm, a principal in TBF, accessed the DebtX

website and viewed the following documents relating to the Sovereign Assets offering:  (a)

Terms of Sale Memorandum; (b) Asset Summary; (c) Asset Sale Agreement; and, (d) the due

diligence files and Excel summary of assets and balances which Sovereign provided to DebtX.

(See, Affidavit of Jennifer Remare of DebtX, ¶¶ 1 and 5, a true and correct copy of which is

attached hereto and incorporated by reference herein as Exhibit "O.")  A true and correct copy of

the Asset Sale Agreement and the pertinent portions of the Excel summary of assets and balances, as produced by DebtX, are attached hereto and incorporated by reference herein as Exhibits "P" and "Q", respectively.

27. The Excel summary of assets and balances identifies the Reinhart loan as one of the loans included within the pool of Sovereign Assets. (See, Exhibit "Q.")

28. On September 27, 2012 at 11:10 a.m., Adam Boehm viewed and/or downloaded from the DebtX website Update 6 – Possible Secured Loan Status Update which Sovereign had provided to DebtX (hereinafter referred to as the "Status Update") and which reads in pertinent part as follows:

> Nicholas Reinhart:  Title search shows Sovereign 1st, but property subject to Sovereign's mortgage burnt down without insurance coverage listing Sovereign as mortgagee.  Only land left.  Loan documents include a Note, Change in Terms Agreement, Mortgage, 2 Modifications and a Forbearance Agreement."

(See, Exhibit "O", ¶ 5).  A true and correct copy of said Status Update is attached hereto and incorporated by reference herein as Exhibit "R."

29. On September 27, 2012 at 1:11 p.m., Adam Boehm of TBF submitted to DebtX a sealed bid for the Sovereign Assets.  A true and correct copy of TBF's sealed bid in connection with regard to the Sovereign Assets is attached hereto and incorporated by reference herein as Exhibit "S."

30. On that same date, Adam Boehm forwarded an executed signature page of the Asset Sale Agreement to DebtX.  A true and correct copy of the executed Asset Sale Agreement signature page is attached hereto and incorporated by reference herein as Exhibit "T."

31. DebtX sent Adam Boehm confirmation that TBF was the winning bidder for the Sovereign Assets via email correspondence on September 28, 2012.  A true and correct copy of

the September 28, 2012 correspondence is attached hereto and incorporated by reference herein as Exhibit "U."

32.  In June, 2013, TBF engaged Weinstein Appraisal Group (hereinafter referred to as "Weinstein") to conduct an appraisal of the property.  Weinstein issued a written report on July 1, 2013, in which it opined that the market value of the fee simple interest in the property as of June 19, 2013 was Four Hundred Thousand Dollars ($400,000.00). A true and correct copy of the relevant portions of the July 1, 2013 Weinstein Appraisal Report is attached hereto and incorporated by reference herein as Exhibit "V."

## II.  TBF'S CLAIMS

33.  Plaintiff alleges that it has an equitable lien on and is entitled to the Erie Policy proceeds paid to Penn Liberty in the amount of the Reinharts' unpaid obligation to Sovereign/TBF. (See, Exhibit "A.")

34.  In paragraph 28 of the Amended Complaint, Plaintiff alleges that unless an equitable lien is placed on the Erie Policy proceeds, Penn Liberty will be unjustly enriched and "TBF's rights as the first mortgagee will effectively be subrogated to Defendant's as the second mortgagee." (See, Exhibit "A.")

## III. BASIS FOR SUMMARY JUDGMENT

35.  Under Pennsylvania law, where an adequate remedy at law consisting of damages exists, a party in is not entitled to equitable relief.  Weinstein v. JP Morgan Chase/Chase Fin., 2013 U.S. Dist. LEXIS 65937 (E.D. Pa. May 8, 2013); Harold v. McGann, 406 F. Supp. 2d 562 (E.D. Pa. 2005).

36.  TBF has an adequate remedy for damages at law, in the form of a confessed judgment against the Reinharts and/or foreclosure on the property.  Accordingly, Plaintiff is not entitled to equitable relief.

37.    Further, equitable relief will not be awarded in the absence of the unjust enrichment of one of the parties.  Weinstein v. JP Morgan Chase/Chase Fin., 2013 U.S. Dist. LEXIS 65937 (E.D. Pa. May 8, 2013); Harold v. McGann, 406 F. Supp. 2d 562 (E.D. Pa. 2005).

38.    Penn Liberty was contractually entitled to the proceeds of the Erie Policy and, therefore, was not unjustly enriched by the receipt of said proceeds.

39.    Courts sitting in equity will not relieve a party from the consequences of its own carelessness where there were available means which would have enabled the party to avoid the mistake if reasonable care had been exercised.  First Federal Sav. & Loan Ass'n. v. Swift, 457 Pa. 206, 321 A.2d 895, 1974 Pa. LEXIS 833 (1974); Home Owners' Loan Corp. v. Crouse, 151 Pa. Super. 259, 30 A.2d 330, 1943 Pa. Super. LEXIS 278 (1943).

40.    In the present case, Sovereign acted carelessly by failing to ensure the existence of a fire insurance policy on the property that identified Sovereign as a mortgagee or loss payee. TBF was fully aware of the lack of insurance for Sovereign prior to its purchase of the Sovereign Assets.  (See, Exhibit "O", ¶ 5 and Exhibit "R.")

41.    Further, TBF acted carelessly by failing to conduct a due diligence review of the Reinhart loan and/or any independent research regarding the obligors or the loan.  (See, pertinent portions of the deposition testimony of Robert Boehm, Chief Financial Officer and corporate designee of TBF, a true and correct copy of which is attached hereto and incorporated by reference herein as Exhibit  "W," pp. 96-7, lines 24-5.)

42.    Finally, TBF acted carelessly in failing to pursue any reasonable legal efforts to collect on the Reinharts' obligation by either confessing judgment against the Reinharts or foreclosing on the property.

43.    Penn Liberty, as the named Primary Residence-Mortgagee, is the only party entitled to the proceeds of the Erie Policy.

44.     Neither Sovereign nor TBF as its successor in interest are entitled to proceeds under the Erie Policy as neither were a named beneficiary under the policy.

45.     A fire insurance contract is personal in nature and does not run with the insured property. Accordingly, where a policy of fire insurance is made expressly payable to a second mortgagee, the second mortgagee is entitled to the policy proceeds in preference to the holder of a first mortgage who is not listed as a loss payee under the policy.  Midland Lumber & Supply v. J.P. Builders, 265 N.J. Super. 246, 626 A.2d 89, 1993 N.J. Super. LEXIS 672 (Law Div. 1993); See, Michael E. Black Profit Sharing Plan v. Stephens, 973 S.W.2d 451, 1998 Tex. App. LEXIS 4763, 98:32 Tex. Civil Op. Serv. 169 (Tex. App. Amarillo 1998).

46.     Plaintiff has failed to produce any evidence to support the existence of an equitable lien.

WHEREFORE, Defendant respectfully requests that summary judgment be entered in favor of Penn Liberty Bank and that Plaintiff, TBF Financial, LLC's claims against Penn Liberty be dismissed with prejudice.

Respectfully submitted,

**CONNOR, WEBER & OBERLIES**

/s/ William J. Weber, Jr.
William J. Weber, Jr., Esquire
Franklin R. Strokoff, Esquire
Mary Ellen F. Pina, Esquire
Suite 1C47, 2401 Pennsylvania Avenue
Philadelphia, PA  19130
Telephone: 215-978-2900
Attorneys for Defendant,
Penn Liberty Bank

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TBF FINANCIAL, LLC<br>520 Lake Cook Rd., Suite 510<br>Deerfield, IL 60015 | : CIVIL ACTION NO. 13-cv-276<br>:<br>:<br>: |
| Plaintiff | :<br>: |
| v. | :<br>: |
| PENN LIBERTY BANK<br>724 West Lancaster Ave., Suite 210<br>Wayne, PA 19087 | :<br>:<br>: |
| Defendant | :<br>: |

**BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT OF
<u>DEFENDANT, PENN LIBERTY BANK</u>**

**I.    <u>INTRODUCTION</u>**

In the present action, Plaintiff, TBF Financial, LLC (hereinafter referred to as "Plaintiff" or "TBF"), without any factual or legal basis,  seeks the imposition of an equitable lien on the proceeds of a fire insurance policy on which it was not identified as a mortgagee or loss payee. Not a scintilla of evidence has been produced to establish an equitable lien owed to Plaintiff. The factual circumstances underlying Plaintiff's claims and the procedural background of the present action are set forth in detail in the instant motion for summary judgment.

## II.   SUMMARY OF ARGUMENT

Plaintiff has failed to sustain the burden of proof necessary to withstand the instant motion for summary judgment.  Specifically, TBF has failed to establish that it is entitled to an equitable lien on the subject insurance proceeds.  TBF cannot meet its burden of proof and it cannot establish 1) that no adequate remedy at law exists; and, 2) that Defendant, Penn Liberty Bank (hereinafter referred to as "Defendant" or "Penn Liberty") is unjustly enriched if equitable relief is not awarded to Plaintiff.  Further, Plaintiff is not entitled to the imposition of an equitable lien to relieve TBF of the consequences of the carelessness of its predecessor in interest.  In addition, a contract of fire insurance is personal in nature and does not run with the insured property.  Therefore, TBF has no claim to the proceeds under the Erie Policy on which Penn Liberty was the sole named mortgagee.

## III.   SUMMARY JUDGMENT STANDARD

A party is entitled to summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a).  For a fact to be "material," it must affect the outcome of the suit from a substantive standpoint and be genuinely in dispute.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).  An issue of fact is "genuine" only when there is sufficient evidence from which a reasonable jury could find in favor of the non-moving party regarding the existence of that fact.  Id.  In order for the non-moving party to establish the existence of relevant factual disputes, it is not entitled to rely merely upon the allegations it has made or its denial of facts but, rather, by affidavit or otherwise, must demonstrate specific facts showing a genuine factual issue to be resolved at trial.  If the non-

moving party fails to satisfy this burden, summary judgment shall be entered against the non-moving party. Fed. R. Civ. Pro. 56(e).


IV.    **ARGUMENT**

    A.    PLAINTIFF HAS AN ADEQUATE REMEDY AT LAW WHICH PRECLUDES THE IMPOSITION OF AN EQUITABLE LIEN.

        In order to prevail on its claim for equitable relief, Plaintiff must establish that there is no adequate remedy at law and that the failure to impose equitable relief would lead to the unjust enrichment of Defendant. See, Weinstein v. JP Morgan Chase/Chase Fin., 2013 U.S. Dist. LEXIS 65937 (E.D. Pa. May 8, 2013); Harold v. McGann, 406 F. Supp. 2d 562 (E.D. Pa. 2005).

        1.    Plaintiff Has an Adequate Remedy at Law.

        Pennsylvania law provides that equitable relief will not be granted where there is an adequate remedy at law consisting of damages. Harold v. McGann, 406 F. Supp. 2d 562, 576 (E.D. Pa. 2005)(citing Goadby v. Philadelphia Elec. Co., 639 F.2d 117 (3d Cir. 1981)). Stated otherwise, the existence of an adequate legal remedy precludes a party from invoking the equity powers of a court. See Cabot v. Jamie Record Co., 1999 U.S. Dist. LEXIS 5549 at *19, No. 96-cv-4672 (E.D. Pa. 1999).

    The Pennsylvania Supreme Court, in Trachtenburg v. Sibarco Stations, Inc., 477 Pa. 517, 384 A.2d 1209, 1978 Pa. LEXIS 934 (1978), opined that an award of money damages constituted an adequate remedy at law and , therefore, the trial court had improperly invoked equity jurisdiction when it ordered the specific performance of a contract for the sale of real property. In Trachtenburg, the appellant buyer contracted with appellee sellers to purchase real property on which it intended to construct a service station. The purchase was contingent upon

appellant's receipt of a building permit. Appellant was unable to secure the necessary permit and appellees filed a complaint in equity seeking specific performance of the contracts of sale and money damages. The trial court entered judgment on behalf of the appellee sellers for specific performance and for money damages. The Supreme Court of Pennsylvania reversed and remanded the judgment, holding that the appellees' remedy at law (i.e. payment of the purchase price under the contracts) was adequate and complete. Accordingly, the trial court erred in invoking equity jurisdiction.

In the present case, TBF has an adequate and complete remedy at law. In fact, Plaintiff has more than one legal remedy available to it. First, Plaintiff has the ability to foreclose on the property. TBF, having purchased all of Sovereign's right, title and interest in the Sovereign Note and Mortgage[1], is entitled to institute a mortgage foreclosure action on the subject property to recoup the monies owed by the Reinharts.[2] Second, according to the Forbearance and Modification Agreement executed by the Reinharts in March 2009, TBF is entitled to pursue a collection action against the Reinharts and confess judgment against them to recover the outstanding balance owed[3] Clearly, TBF has adequate remedies at law. Based upon the foregoing, it would be improper for this Honorable Court to invoke its equity jurisdiction in the present matter and Penn Liberty's Motion for Summary Judgment must be granted.

2.  <u>Plaintiff in Unable to Establish that Penn Liberty is Unjustly Enriched if TBF is Not Awarded an Equitable Lien.</u>

As set forth above, Plaintiff has failed to meet the first prerequisite to an award of equitable relief: the lack of an adequate remedy at law. Similarly, Plaintiff cannot establish the second prerequisite: that failure to impose equitable relief would lead to the unjust

---

[1] See Exhibit "A", ¶ 12, of the instant motion for summary judgment.
[2] TBF has secured an appraisal of the property which assessed its value at $400,000 as of June 19, 2013.
[3] See ¶ 19 of and Exhibit "I" to the instant motion for summary judgment.

4

enrichment of one of the parties.  See, Weinstein v. JP Morgan Chase/Chase Fin., 2013 U.S.

Dist. LEXIS 65937 (E.D. Pa. May 8, 2013); Harold v. McGann, 406 F. Supp. 2d 562 (E.D. Pa.

2005).

In Weinstein v. JP Morgan Chase/Chase Fin., 2013 U.S. Dist. LEXIS 65937 (E.D. Pa.

May 8, 2013), the court refused to impose an equitable lien on funds held in a bank account due

to the plaintiff's failure to establish that the bank had been unjustly enriched.  In that case, the

Weinsteins bought a piece of land and engaged  Masterpiece to construct a house on the

property.  They obtained a construction loan from Chase to finance the project.  Prior to

completion of the project, Masterpiece filed for bankruptcy and its bank, Wilmington Trust,

seized money from Masterpiece's  account and used the funds to pay off Masterpiece's

outstanding  debt obligations unrelated to the construction of the Weinsteins' residence.  The

Weinsteins asserted that they were entitled to the imposition of an equitable lien on the funds

held by Wilmington Trust.  At the outset of its analysis, the Weinstein court noted that an

equitable lien is a remedy "imposed to protect against and disgorge any unjust enrichment."

Weinstein, 2013 U.S. Dist. LEXIS 65937, at * 14 (citing HCB Contrs. v. Rouse & Assocs.,

1992 U.S. Dist. LEXIS 9916 at *30 (E.D. Pa. 1992)).  Concluding that plaintiffs' blanket

allegation that Wilmington Trust had been unjustly enriched was far too attenuated to support

an award of equitable relief, the court refused to impose an equitable lien on the funds held by

Wilmington Trust.

Similarly, in the present case, TBF has failed to establish that Penn Liberty has been

unjustly enriched.  In September, 2008, Sovereign and Penn Liberty were both served with a

Notice of Cancellation of the homeowners' insurance policy which State Farm had issued

covering the subject property.[4]  Penn Liberty acted diligently to ensure that the Reinharts

fulfilled their obligation under the Penn Liberty Mortgage to maintain fire and extended

insurance on the property for the benefit of Penn Liberty.  Subsequently, when the Reinhart

residence was destroyed by fire, Penn Liberty submitted a claim under the Erie Policy for the

insurance proceeds to which it was contractually entitled[5] and said proceeds were paid out by

Erie.[6]  Clearly, TBF has not, and cannot, establish the second prerequisite to an award of

equitable relief, i.e., that Penn Liberty was unjustly enriched by receipt of the insurance

proceeds to which it was contractually entitled.[7]

      B.     SOVEREIGN'S CARELESS CONDUCT PRECLUDES AN AWARD OF
             EQUITABLE RELIEF.

          Pursuant to the terms of the Asset Sale Agreement, TBF purchased "all right, title

and interests of [Sovereign] … in, to and under"[8] the Sovereign Assets, including the Reinhart

loan.  Accordingly, with regard to the collection of any amounts owing under the Reinhart

loan, TBF's rights are limited to those which Sovereign would have been able to pursue as of

the date of execution of the Asset Sale Agreement.

          Courts sitting in equity will not relieve a party from the consequences of an error due

to its own carelessness or ignorance when means were available which would have enabled the

party to avoid the mistake if reasonable care had been exercised.  First Federal Sav. & Loan

Ass'n. v. Swift, 457 Pa. 206, 321 A.2d 895, 1974 Pa. LEXIS 833 (1974); 1313466 Ontario.,

Inc. v. Carr, 2008 PA Super 135, 954 A.2d 1, 2008 Pa. Super. LEXIS 1455 (Pa. Super. Ct.

2008); reh'g denied, 2008 Pa. Super. LEXIS 2978 (Pa. Super. Ct. July 7, 2008); reh'g denied,

---

[4] See ¶ 17 of and Exhibit "H" to the instant motion for summary judgment.
[5] See ¶ 22 of the instant motion for summary judgment.
[6] See ¶ 23 of the instant motion for summary judgment.
[7] For a more detailed discussion of Penn Liberty's entitlement to the proceeds under the Erie Policy see section C, below.
[8] See ¶ 28 of and Exhibit "P" to the instant motion for summary judgment.

2008 Pa. Super. LEXIS 3012 (Pa. Super. Ct. Aug. 26, 2008).  In First Federal Sav. & Loan

Ass'n., the plaintiff (FFSLA) held the mortgage on a piece of property. Taxes on the property

became delinquent and FFSLA was notified of the date on which the property was to be sold at

judicial sale.  Based upon misinformation received from a third party, FFSLA did not attend

the judicial sale and the property was sold to Mr. Swift free and clear of all liens, mortgages

and charges.  FFSLA instituted an equitable proceeding to set aside the judicial sale and the

trial court granted the requested relief. Upon review of the case, the Supreme Court of

Pennsylvania began its analysis noting that "courts of equity will not relieve a party from the

consequences of an error due to his own ignorance or carelessness when there were available

means which would have enabled him to avoid the mistake if reasonable care had been

exercised." First Federal Sav. & Loan Ass'n., 457 Pa. 206, 213, 321 A.2d 895, 1974 Pa.

LEXIS 833, at * 9-10 (1974).  (citing Home Owners' Loan Corp. v. Crouse, 151 Pa. Superior

Ct. 259, 263, 30 A.2d 330, 332 (1943))  In the matter before it, the court noted that had FFSLA

sent its representative to the sale on the date specified in the notice provided, its rights would

have been adequately protected. The Court concluded that the "'mistake of fact' alleged by

First Federal is precisely the sort of mistake which cannot provide a basis for equitable relief."

First Federal Sav. & Loan Ass'n., 457 Pa. 206, 212, 321 A.2d 895, 1974 Pa. LEXIS 833, at * 9

(1974).  Accordingly, the court reversed the decree setting aside the judicial sale of the

property.

     In this case, Sovereign acted carelessly in not taking the appropriate steps to

confirm that there was insurance coverage on the property listing Sovereign as a mortgagee.

Now, TBF is asking this Honorable Court to relieve Plaintiff from the consequences of

Sovereign's carelessness.  However, as TBF's rights to collect under the Reinhart loan are no

greater than Sovereign's, it would be improper for this Honorable Court to relieve Plaintiff of the consequences of Sovereign's carelessness. In addition, TBF itself was careless in failing to exercise due diligence prior to the purchase of the Reinhart loan and in failing to pursue reasonable remedies for the collection of the obligation. For these reasons it would be improper for thus Honorable Court to relieve TBF of the consequences of Sovereign's and its own carelessness.

C.   PLAINTIFF HAS NO RIGHT TO THE PROCEEDS FROM AN INSURANCE POLICY ON WHICH IT IS NOT A NAMED MORTGAGEE.

There is no factual or legal basis to establish a right by Plaintiff to the receipt of the proceeds under an insurance policy on which it is not named.

Under Pennsylvania law, "a contract of insurance is for the benefit and protection of the insureds only." Banos v. State Farm Ins. Co., 2007 U.S. Dist. LEXIS 75189, at * 4 (E.D. Pa. Oct. 10, 2007)(citing Fran and John's Doylestown Auto Center, Inc. v. Allstate Ins. Co., 432 Pa. Super. 449, 638 A.2d 1023, 1027 (Pa. Super. 1994)). In Banos, the relevant fire insurance policy was issued in the name of two (2) of six (6) siblings who jointly owned a piece of property. The residence burnt down and State Farm paid the policy proceeds to the named insureds only. The remaining four (4) siblings brought an action against the insurer alleging fraud, negligence and bad faith, seeking equity, reformation and punitive damages. The United States District Court for the Eastern District of Pennsylvania granted State Farms' motion to dismiss the claim for equitable relief, for failure to state a claim upon which relief may be granted.

Similarly, other courts have held that a contract of fire insurance is personal to the named insured and does not run with the property covered by the policy. Accordingly, the

8

holder of a lien on the insured property is not entitled to fire insurance proceeds simply because of its lien. Midland Lumber & Supply v. J.P. Builders, 265 N.J. Super. 246, 626 A.2d 89, 1993 N.J. Super. LEXIS 672 (Law Div. 1993). Because of the personal nature of a contract of insurance, if an insurance policy is made expressly payable to a second mortgagee, the second mortgagee is entitled to the policy proceeds in preference to the holder of a first mortgage who is not listed as a loss payee under the policy. Id.

In Midland, the court was faced with the question of whether a subordinate lien holder named as a loss payee was entitled to the insurance proceeds in preference to the holder of a superior lien on the encumbered real estate.  The court began its analysis by recognizing that a mortgagee has an insurable interest in mortgaged property and it is common for mortgage agreements to provide for the maintenance of insurance for the benefit of the mortgagee. However, the mortgagee must take all steps necessary to confirm insurance coverage for its own benefit.  Thus, where there is more than one mortgage on a specific piece of property and only one mortgagee is listed as a loss payee under the policy, the named mortgagee is entitled to the proceeds under the policy regardless of the priority of its lien. Accordingly, the Midland court found that the second mortgagee was entitled to the policy proceeds over the first mortgagee who was not listed as a loss payee under the policy.  The same conclusion was reached in Michael E. Black Profit Sharing Plan v. Stephens, 973 S.W.2d 451, 1998 Tex. App. LEXIS 4763, 98:32 Tex. Civil Op. Serv. 169 (Tex. App. Amarillo 1998), a case based upon a similar factual scenario.

Penn Liberty had an insurable interest in the property and it took all necessary steps to ensure that coverage was in place to protect its rights. The Erie Policy was a personal contract for the benefit of Penn Liberty.  Contrary to the position being asserted by TBF, the Erie Policy

did not run with the property. Accordingly, the proceeds of said policy are rightfully payable only to the named mortgagee, Penn Liberty.

       D.     PENN LIBERTY HAD NO DUTY TO ENSURE THE EXISTENCE OF INSURANCE FOR THE BENEFIT OF THE FIRST MORTGAGEE.

Penn Liberty, as the second mortgagee, had no duty to ensure the existence of insurance coverage for the benefit of Sovereign, the first mortgagee.

The Superior Court of Pennsylvania was faced with the issue of the duty which one bank owes to another in Commerce Bank v. First Union Nat'l Bank, 2006 PA Super 305, 911 A.2d 133, 2006 Pa. Super. LEXIS 3765 (Pa. Super. Ct. 2006). In that case, Commerce Bank alleged that First Union knew or should have known that one of its customers was operating a check-kiting scheme using its First Union account. However, Commerce alleged, First Union failed to issue a Suspicious Activity Report ("SAR"), as required under federal law, for fear that closing the account would result in a multi-million-dollar loss. The same customer subsequently approached Commerce for banking services and provided information on its still active account at First Union. Relying on the history from the First Union account, Commerce allowed the customer to open an account and, within a few weeks, discovered the operation of a check-kiting scheme from the Commerce account. Ultimately, Commerce sustained a $900,000 loss as a result of the check-kiting activity. Commerce filed suit against First Union alleging, among other causes of action, unjust enrichment and seeking the imposition of a constructive trust. The trial court granted summary judgment in favor of First Union on both claims. With regard to the unjust enrichment claim, the court opined that Commerce was unable to establish that First Union unjustly retained any of Commerce's funds. The court

concluded that Commerce's request for the imposition of a constructive trust necessarily failed because the unjust enrichment claim lacked merit.

Commerce Bank appealed and the Superior Court of Pennsylvania affirmed the grant of summary judgment on both causes of action. In support of its decision, the court set forth a detailed analysis as to why First Union did not owe a duty to Commerce under the circumstances. At the outset of its discussion of this issue, the Commerce Bank court noted that "[i]n determining the existence of a duty of care, it must be remembered that the concept of duty amounts to no more than the sum total of those considerations of policy which led the law to say that the particular plaintiff is entitled to protection from the harm suffered[.] To give it any greater mystique would unduly hamper our system of jurisprudence in adjusting to the changing times. " Commerce Bank, 2006 PA Super 305, 911 A.2d 133, 137, 2006 Pa. Super. LEXIS 3765, * at 8 (quoting Althaus v. Cohen, 562 Pa. 547, 756 A.2d 1166, 1168-89 (Pa, 2000)).

The Commerce Bank court concluded that the following factors supported the finding that First Union did not owe a duty to Commerce. First, there was no discernible relationship between the two banks so as to impose a special duty of care. Second, Commerce failed to establish that it was foreseeable that any act by First Union would lead to the harm suffered. Third, there was no great public interest to be served by imposing a duty under the circumstances. Fourth, and most importantly, the consequences of imposing such a duty would prove onerous. As to this final factor, the court stated "[w]e decline to make banks the guarantors of their clients' trustworthiness. Moreover, imposing liability would inevitably force banks to close or restrict the clients' accounts on the least degree of suspicion, thereby alienating their customers, in order to avoid unspecified liability. This factor strongly weighs

against a finding of a duty". <u>Commerce Bank</u>, 2006 PA Super 305, 911 A.2d 133, 142, 2006 Pa. Super. LEXIS 3765, * at 23.

Similarly, the facts of the case presently before the court do not support the finding of a duty of care owed by a second mortgagee to ensure that a first mortgagee has adequately protected its own rights. As in <u>Commerce Bank</u>, there is no discernible relationship between Penn Liberty, on the one hand, and TBF standing in the shoes of Sovereign on the other. Second, it would be unreasonable to expect Penn Liberty to foresee that the first mortgagee would fail to take the steps necessary to secure its interest in the subject collateral. Third, no great public interest would be served by the finding of a duty under these circumstances. Finally, and equally as importantly as in the <u>Commerce Bank</u> case, the onus that would be imposed if a second mortgagee was required to ensure that the first mortgagee had properly secured its rights would be insurmountable for the later, and would impose significant and adverse consequences on the secondary mortgage market as a whole. Plaintiff has not, and cannot, advance any policy considerations that would justify protecting TBF from the harm caused by its predecessor in interest. In fact, all policy arguments counsel against the imposition of such a duty. As in the <u>Commerce Bank</u> case, this Honorable Court should refuse to place a duty on Penn Liberty to ensure the rights of the first mortgagee in this matter.

## V.    **CONCLUSION**

Based upon the evidence presented Plaintiff has failed to sustain the burden of proof necessary to withstand the instant motion for summary judgment. Specifically, TBF has failed to establish its entitlement to an equitable lien in light of (1) the existence of an adequate legal remedy; and, (2) the absence of the unjust enrichment of any party. Further, equitable relief is

not appropriate to relieve Plaintiff of the consequences of Sovereign's carelessness and TBF's own careless.  Finally, as a contract of insurance runs with the property, the sole entity entitled to the proceeds under the Erie Policy is Penn Liberty, the named mortgagee.  Clearly, TBF has failed to establish a valid claim for equitable relief. Accordingly, the present action must fail.

WHEREFORE, Defendant respectfully requests that summary judgment be entered in favor of Penn Liberty Bank and that Plaintiff, TBF Financial, LLC's claims against Penn Liberty be dismissed with prejudice.

Respectfully submitted,

**CONNOR, WEBER & OBERLIES**

/s/ William J. Weber, Jr.
William J. Weber, Jr., Esquire
Franklin R. Strokoff, Esquire
Mary Ellen F. Pina, Esquire
Suite 1C47, 2401 Pennsylvania Avenue
Philadelphia, PA   19130
Telephone: 215-978-2900
Attorneys for Defendant,
Penn Liberty Bank

## IN UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

|                                        |   |                      |
|----------------------------------------|---|----------------------|
| TBF FINANCIAL, LLC,                    | : |                      |
|     Plaintiff      | : |                      |
|   v.                         | : |                      |
|                                        | : | **CIVIL ACTION**     |
| PENN LIBERTY BANK,                     | : |                      |
|     Defendant      | : | **No.** 13-cv-276    |

### CERTIFICATE OF SERVICE

I, William J. Weber, Jr., Esquire, attorney with the law firm of Connor Weber & Oberlies hereby certify and affirm that a copy of the attached Motion For Summary Judgment was served via the Court's filing system and electronic mail and U.S. Mail postage prepaid this 28th day of October, 2013, to the following:

Monica Mathews Reynolds, Esquire
Spector, Gadon & Rosen, PC
1635 Market St., 7th Fl.
Philadelphia, PA  19103
mreynoldsglawsgr.com


_William J. Weber, Jr., Esquire / ss_
WILLIAM J. WEBER, JR.,, ESQUIRE


CONNOR WEBER & OBERLIES
171 W. Lancaster Avenue
Paoli, PA  19301
610-640-2811
Atty. I.D. #33137